JOHNSTON v. OKEECHOBEE GENERAL HOSPITAL, et al.
No. 1998-E.

Circuit Court, Okeechobee County.

February 21, 1964.

Angus Sumner of Sumner & Sumner, and David L. McCain of Carlton & McCain, all of Fort Pierce, for plaintiff.

Otis R. Parker of Fee, Parker & Neill, Fort Pierce, for defendants.

WALLACE SAMPLE, Circuit Judge.

*Final decree:*   Plaintiff, a physician, sues for injunctive relief against the defendants on the ground that plaintiff's suspension from the practice of his profession in Okeechobee General Hospital, a public hospital, was without due cause, arbitrary and unreasonable.

Final hearing was held on complaint and answer, an application for a temporary restraining order having been previously denied. Counsel stipulated on certain facts and to submit the matter on testimony taken at the hearing for a temporary restraining order, and have filed written briefs in lieu of oral argument.

The complaint alleges plaintiff is a graduate of an approved medical school, legally licensed to practice medicine under the laws of the state of Florida; that during the year 1959 he became a member of the medical staff of the Louisiana Raulerson Hospital, now Okeechobee General Hospital in Okeechobee, Florida; that the trustees of the said hospital, on September 11, 1962, suspended him without cause from the practice of medicine in said hospital and denied him the use of the hospital facilities for that purpose; that by such action he has lost his right to practice his profession and earn a livelihood; that the acts of the defendants were unlawful for spurious reasons, discriminatory and violated his rights under the federal and state constitutions.

Defendants, by their answer, admitted many of the material allegations of the complaint, but denied plaintiff was suspended without cause, and alleged that plaintiff was refused the privilege of using the facilities of Okeechobee General Hospital for surgery or in the treatment of patients and ceased to be a member of its medical staff as of September 11, 1962 because of his failure to comply with the by-laws, rules and regulations of the medical staff and the board of trustees of said hospital in that he did not meet the qualifications for membership in the local medical society as required by section 1, article 3 of the by-laws, rules and regulations of the hospital which provides as follows —

"Applicant for membership on the medical staff shall be a graduate of an approved medical school, legally licensed to practice in the State of Florida, *qualified for membership in the local medical society* and practicing within the community or within a reasonable distance of the hospital". (Italics added.)

There is no "local medical society", as such, duly organized and in existence in the city of Okeechobee, or in Okeechobee County, the physicians of the city and county being served in this respect by a medical society commonly known as the Tri-County Medical Society and composed of physicians in the counties of Saint Lucie, Martin and Okeechobee.

The plaintiff is not now a member of the Tri-County Medical Society. It appears uncontradicted that he was a charter member of the Saint Lucie, Indian River, Martin and Okeechobee County Medical Society, predecessor to the Tri-County society; that he maintained such membership for eighteen years; that he held every office in the society and twice served as its president and that his name was dropped from the membership roll only when he moved his practice, for a period of time not involved here, into an area not served by the society. Upon his return to Okeechobee he reapplied to the society for membership and was rejected. The hospital trustees then excluded him from practice in the hospital.

The turning point depends on whether the by-law of the hospital above quoted, is unreasonable or arbitrary as it applies to the plaintiff under the factual situation presented here. No conclusion other than that it is unreasonable, arbitrary and against public policy can be reached.

To begin with, the by-law does not require "membership" in the society but only that the physician be "qualified for membership". Absent any evidence to the contrary, and there is none here, plaintiff's prior membership in the society, for 18 years speaks loudly and authoritatively that he is, or was for 18 years, "qualified for membership". He was rejected by the society, upon his reapplying for membership, "because he did not meet the qualifications of the Society for membership" (Defs.' Ex. 4 — Pltf's. Ex. 7), thereupon he was notified by the hospital "you cannot use the facilities of this hospital . . . until you can qualify under the rules and regulations of our medical staff" (Pltf's. Ex. 7 — Defs.' Ex. 4). Prior to final suspension he was notified by the hospital he had "60 days . . . to achieve membership in the local medical society" (Pltf's. Ex. 6).

"Membership" and "qualified for membership" can be, and in this instance are, unrelated and have entirely different meanings. "Membership" in the society is not required; but to be "qualified for membership" is required. Yet it appears the suspension was based solely on non-membership in the society which rejected his application without giving any reason, other than that "he did not meet the qualifications of the society for membership", despite his previous membership of 18 years. It must be added, however, there is no requirement whatever, legal or otherwise, the society must apprise anyone of the reasons for rejecting an applicant for membership; their vote is taken by ballot and negative votes totaling one plus one-third of those present and voting causes rejection of any applicant.

Under such arrangements any qualified physician could be arbitrarily, or intentionally, thwarted in his effort to gain admission into a public hospital. The manner of selection, or the qualifications, of members of the society are not in question; it is the fact that admission to practice in a public hospital is dependent upon favorable vote by members of a voluntary association, a non-governmental organization which has nothing whatever to do with the management, operation or control of the hospital, which causes the by-law to be unreasonable and arbitrary.

The dilemma with which a rejected physician is faced is that he has no place to go — except to court. The hospital says to the physician "join the society". The society says "rejected", stating no reasons, or grounds, on which he can go back to the hospital and defend himself; neither can he defend himself before the

society or appeal their rejection. He's left out in the cold. Thus, and in this manner, does the situation become untenable; the by-law unreasonable and arbitrary. Such procedures constitute conviction without trial, are not sanctioned, and are against public policy — here and elsewhere.

No guiding precedents have been established in Florida except those several decisions which hold the admission of a physician to practice in a hospital to be a privilege, and not a right, and subject always to reasonable rules and regulations by the governing body of the hospital concerning the physicians practice within the hospital and their qualifications to be admitted to practice in the hospital.

Other jurisdictions have passed squarely on the question and have declared such a by-law void per se, of no effect, and contrary to public policy. Even though such authority is only persuasive this court cannot ignore and depart from the rationale and reasoning thereof. To do so would require the abandonment of logic, the spirit of fair play, and the right to have a forum where one may defend himself.

From Hamilton County Hospital v. Andrews (Ind.), 84 N.E. 2d 469, 24 A.L.R. 2d 855 —

"No reputable physician residing in a county of this state having a county hospital can be discriminated against by such hospital. This is a right which belongs to him and not his patients. Regularly licensed physicians have a right to practice in public hospitals of this state so long as they stay within the law and conform to all reasonable rules and regulations of the institutions.

"It will be further noted that by the involved rules, appellee's right to practice in the hospital is not only conditioned on his being a member of the staff, but also on his being a member of the Hamilton County Medical Society, an extra governmental agency. His admission to this society depends entirely upon the sole determination of the society. Whether he could ever become a member depends upon conditions beyond his control. By this rule the hospital delegates its power to determine what physicians may use its facilities. It amounts to a preference in favor of the society and a discrimination against those physicians who by choice or otherwise, are not members of same."

From Ware v. Benedikt (Ark.), 280 S.W. 2d 234 —

"Like other courts, we recognize it as a matter of general knowledge that medical societies have rendered a great and valuable public service over the years in developing and maintaining high standards of professional conduct and practice,

and no implication is intended that such organizations may not adopt any reasonable methods to preserve such standards. However, we agree with the chancellor's findings that the amended by-law in question is unreasonable and invalid. As affecting validity, we perceive no material difference between a rule that makes membership in a medical society a prerequisite to staff privileges and one that requires approval and recommendation by the members of said society . . . In holding the by-law unreasonable and discriminatory we do not mean to infer that a public hospital may not validly enact rules and regulations applicable to all physicians and surgeons alike and which bear a reasonable and fundamental relation to the safety, interest and welfare of patients and the general public. The by-law in question does not meet this test. In urging its reasonableness appellants assert the necessity of having some group to whom they can turn for advice in considering the qualifications of applicants for staff membership since appellants themselves are not medical men. But the fact that appellants are unlearned in medicine does not preclude them from procuring the assistance and advice of medical and hospital organizations and groups, . . . in formulating rules which bear a reasonable relationship to public safety and welfare. A medical society is a private organization whose membership conceivably may bestow or withhold approval of a fellow physician's application for a valid reason, or for no reason at all, under the by-law in question."

From Griesman v. Newcomb Hospital (Superior Court of New Jersey), 183 Atl. 2d 878-886 —

"The by-law of the defendants which purports to require membership in the county medical society * * * as a basic requirement * * * for admission to the medical staff of the Newcomb Hospital is void per se and of no effect whatever as contrary to the public policy of our state".

From 26 Am. Jur. 1963 Supplement, Page 61, Section 9, Hospitals and Asylums (quoting Hamilton County case above) —

" * * * a requirement of membership in a county medical society as a condition of the right of a duly licensed physician or surgeon to practice in a county hospital has been held invalid".

It is ordered and decreed that the requirement of Okeechobee General Hospital that an applicant for membership on its medical staff be qualified for membership in the local medical society be, and the same is hereby, held void and of no force and effect whatever.

It is further ordered and decreed a mandatory injunction is hereby issued and directed to the trustees of Okeechobee General Hospital, individually and collectively, requiring and directing

6

them to reinstate plaintiff, Steve Renwick Johnston, M. D., as a member of the medical staff of said hospital and permit him the use of the facilities of said hospital in his profession of physician and surgeon, subject always to such reasonable by-laws, rules and regulations as are now, or hereafter may be, in effect governing the medical staff and physicians permitted to practice in said hospital.